UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MELISSA TIERNEY, individually and on
behalf of other persons similarly situated who
were employed,

                Plaintiffs,

       - against -

SIRIUS XM RADIO, INC., and/or any other
entities affiliated with or controlled by SIRIUS
XM RADIO, INC.,

                Defendants.

**Case No. 14-cv-2926 (VEC)**

---

## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR COURT AUTHORIZED NOTIFICATION TO THE COLLECTIVE, PURSUANT TO 29 U.S.C. § 216(b)

JONES DAY
Matthew W. Lampe
Emilie A. Hendee
222 East 41st Street
New York, NY 10017
Phone: (212) 326-3939
Fax: (212) 755-7306
mwlampe@jonesday.com
ehendee@jonesday.com

*Attorneys for Defendant Sirius XM Radio Inc.*

***ORAL ARGUMENT REQUESTED***

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ..................................................................................... 3

    A.    Sirius XM Radio Inc. and Internships................................. 3

    B.    The Varying Activities of Sirius XM Interns ......................... 6

    C.    The Instant Action................................................................. 8

ARGUMENT ........................................................................................... 9

  I.    The Court Should Deny Plaintiffs' Motion for Conditional Certification
and Notice ............................................................................................ 9

    A.    The Similarly Situated Requirement...................................... 9

    B.    Plaintiff Has Not Met Her Burden To Establish That All Interns
Are Similarly Situated.......................................................... 10

        1.    Plaintiff and Other Interns Are Not Similarly Situated As
To Their Internship Activities.................................... 11

        2.    Plaintiff and Other Interns Are Not Similarly Situated as to
Their Training and Benefits Received ........................ 12

        3.    Plaintiff and Other Interns Are Not Similarly Situated As
To The Level of Supervision And the Extent To Which The
Internships Impeded Department Operations .............. 15

    C.    Plaintiff's Arguments Under § 216(b) Do Not Suffice.......... 15

  II.    Sirius XM Objects To Plaintiff's Request For Telephone Numbers, Email
Addresses, and Social Security Numbers, and Plaintiff's Request To
Contact Putative Class Members Via Text Message ........................... 19

  III.    Sirius XM Objects To Plaintiff's Proposed Notice............................. 20

## <u>TABLE OF AUTHORITIES</u>

Page

<span style="font-variant: small-caps;">Cases</span>

*Capsolas v. Pasta Resources, Inc.*,
  2011 WL 1770827 (S.D.N.Y. May 9, 2011) ........................................................................19

*Fraticelli v. MSG Holdings, L.P.*,
  2014 WL 1807105 (S.D.N.Y. May 7, 2014) ................................................................. passim

*Glatt v. Fox Searchlight Pictures, Inc.*,
  293 F.R.D. 516 (S.D.N.Y. 2013) ........................................................................................18

*Gonzalez v. Scalinatella, Inc.*,
  2013 WL 6171311 (S.D.N.Y. Nov. 25, 2013) ....................................................................19

*Grant v. Warner Music Grp. Corp.*,
  2014 WL 1918602 (S.D.N.Y. May 13, 2014) ....................................................................18

*Han v. Sterling Nat'l Mort. Co., Inc.*,
  2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011) ....................................................................19

*Hoffmann-LaRoche, Inc. v. Sperling*,
  493 U.S. 165 (1989).......................................................................................................1, 20

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)............................................................................................1, 9

*O'Jeda v. Viacom, Inc.*,
  2014 WL 1344604 (S.D.N.Y. April 4, 2014) ....................................................................18

*Parks v. Eastwood Ins. Servs., Inc.*,
  2002 WL 34370244 (C.D. Cal. July 29, 2002)....................................................................19

*Perez v. Prime Steak House Rest. Corp.*,
  959 F. Supp. 2d 227 (D.P.R. 2013).....................................................................................19

*Reab v. Elec. Arts, Inc.*,
  214 F.R.D. 623 (D. Colo. 2002) .........................................................................................20

*Rudd v. T.L. Cannon Corp.*,
  2011 WL 831446 (N.D.N.Y. Jan. 4, 2011)...........................................................................9

*Vasquez v. Vitamin Shoppe Indus, Inc.*,
2011 WL 2693712 (S.D.N.Y. July 11, 2011) .......................................................................9

*Velazquez v. Digital Page, Inc.*,
2014 WL 2048425 (E.D.N.Y. May 19, 2014) ....................................................................20

*Walling v. Portland Terminal Co.*,
330 U.S. 148 (1947)...........................................................................................................1

**STATUTES**

The Fair Labor Standards Act of 1938, as amended, 29 U.S.C. 201, et seq.......................... passim

## PRELIMINARY STATEMENT

In Fair Labor Standards Act cases, notice is warranted only "in appropriate cases" where the "judicial system [would] benefit[] by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 169-70 (1989).  Plaintiff must "make a modest factual showing that [she] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (internal quotations marks omitted).  Plaintiff Melissa Tierney has failed to meet her burden.

Plaintiff seeks to represent a collective of Sirius XM Radio Inc. ("Sirius XM") interns, arguing that interns were improperly denied minimum wage because they were not treated as "employees" under the FLSA.  The Supreme Court has held that individuals can be "employees," and entitled to minimum wage pay, or "trainees," in which case they need not be paid minimum wage.  *Walling v. Portland Terminal Co.*, 330 U.S. 148, 150, 152 (1947).  Although the Second Circuit has not addressed the governing standard, the United States Department of Labor has enumerated six fact-intensive factors to examine: (1) whether the internship is similar to training which would be given in an educational environment; (2) whether the internship experience is for the benefit of the intern; (3) whether the intern displaces regular employees and works under the close supervision of existing staff; (4) what immediate benefit the company derives and whether the company's operations may have been impeded; (5) whether the intern is entitled to a job at the conclusion of the internship; and (6) whether the employer and the intern understand that the intern is not entitled to wages for time spent in the internship.  U.S. Dep't of Labor, "Fact Sheet 71: Internship Programs Under the Fair Labor Standards Act."  (DOL Fact Sheet # 71.)  Moreover, the Department of Labor indicates that "whether an internship . . . meets this exclusion depends upon all of the facts and circumstances of each program."  (*Id.*)

Where interns work in many different departments and "their experiences appear to vary greatly from one department to the next, in ways that are highly relevant to the DOL factors," conditional certification should be denied. *Fraticelli v. MSG Holdings, L.P.*, 2014 WL 1807105, at *2 (S.D.N.Y. May 7, 2014) (denying motion for conditional certification of FLSA minimum wage claims of unpaid interns). This is precisely the case here. Some Sirius XM interns are assigned to a department, and the departments at the company vary widely, from Finance, to Human Resources, to Music Production, to Interactive Editorial, to Talent Relations. Other interns are assigned to particular channels, from Bluegrass (a music channel based on a genre popular in Nashville), to Mad Dog Sports Radio (sports talk), to Sirius XM Hits 1 (Top 40 music). Still other interns are assigned to particular shows, including the Howard Stern Show, where Plaintiff interned. All in all, Plaintiff and her proposed class were assigned to no less than 168 different Sirius XM departments, channels, and shows, and each individual department, channel and show is responsible for interviewing candidates, deciding which interns to retain, and setting each intern's day-to-day activities.

Given the wide variation in departments, channels, and shows, it should be no surprise that the day-to-day activities of interns runs the gamut. While the intern in the Finance Department may learn to use Excel to audit royalty payments, an intern in the Sports Department may learn about editing of audio and production of shows. At the same time, an intern in Interactive Editorial may practice shooting and editing video of live performances. While she is doing that, an intern assigned to a particular Sirius XM channel could be learning how to run the boards or how to use software to ingest new music into the company's systems. Meanwhile, the Human Resources intern may be shadowing HR employees in their day-to-duties. Given this extreme variation, it should be no surprise that the amount of and type of training each intern

receives varies from person to person, and the level of supervision of interns likewise differs.  On these facts, conditional certification must be denied.  *Fraticelli*, 2014 WL 1807105, at *2 (denying conditional certification of intern minimum wage claims where, "[i]n general, significant differences exist among the interns in terms of the activities they performed . . ., the supervision, training, and benefits they received . . ., the burden they imposed on [the company], and the manner in which they were selected for their positions").

## BACKGROUND

**A.    Sirius XM Radio Inc. and Internships.**

Sirius XM creates and broadcasts commercial-free music, sports and live events, news and comedy, and talk and entertainment programming.  (Yuen Decl. ¶ 4, 6.)[1]  This content is made available to customers via satellite radios, through an application for mobile devices, and online.  (*Id.* at ¶ 8.)  Sirius XM is the nation's largest radio broadcaster measured by revenue and has more than 26 million subscribers.  (*Id.* at ¶ 9.)  Sirius XM broadcasts over 165 channels, including, but not limited to, 72 commercial-free music channels, 15 news and issues channels, 9 comedy channels, 22 talk and entertainment channels, 11 sports channels, 18 Latin channels, 9 traffic and weather channels, and more.  (*Id.* at ¶ 4.)  For example, some channels available on Sirius XM include Howard 100 and Howard 101 (with content produced by Howard Stern), Elvis Radio (broadcasting the music of Elvis Presley from Graceland), Doctor Radio (with shows hosted by doctors at NYU Langone Medical Center), Mad Dog Sports Radio (sports talk and game broadcasts), and a variety of political talk channels, such as Patriot Plus, each of which feature different hosts throughout the day.  (Yuen Decl. ¶ 4; *see also id.* at Ex. A (channel

---

[1] Defendant Sirius XM Radio Inc. submits herewith the Declarations of Bonnie Yuen, Grayson Adler, Corey Chiocchio, Ben Fraternale, Chris Hammill, William Latin, Fendi Liu, Jennifer Moffett, Michael Turnwall, and Andrew Vuong.  Declarations are cited herein as ("[Declarant Last Name] [paragraph number]").

listing).)  Moreover, with most channels broadcasting 24 hours a day and 7 days a week, each

channel has a variety of programs with different hosts and deejays.  (*Id.* at ¶ 7.)

Against this backdrop, Sirius XM offers a wide variety of unpaid internships for college

students.  (*Id.* at ¶ 10.)  Sirius XM interns are assigned to one of three different areas: a

department, a channel, or a show.  (*Id.* at ¶ 12.)  First, interns may be assigned to a particular

department on either the business or programming side, such as Information Technology, Public

Relations, Sales & Marketing, Broadcast Engineering, Interactive Editorial, Finance, Talent &

Industry Relations, Talk Programming, Sports Programming, or Music Programming.  (*Id.*)

Second, interns may be assigned to a particular Sirius XM channel, such as AltNation (the new

alternative music channel), Bluegrass Junction (which broadcasts from Nashville), or Mad Dog

Sports Radio.  (*Id.*)  Third, interns may be assigned to a specific show, such as the Morning

Mash Up on the Hits 1 music channel, the Howard Stern Show, Stand Up with Pete Dominick, or

the Derek and Romaine Show.  (*Id.*)  Some departments, channels or shows may have one or

more interns, depending on the size of the department, channel, or show.  (*Id.* at ¶ 13.)  Similarly,

some departments, channels or shows may consistently have intern(s) each session, while some

have intern(s) for one session and not the next.  (*Id.*)  The exact number of internships varies

from session to session.  (*Id.* at ¶ 14.)  From May 2011 to present, internships have been offered

in at least 168 different departments, channels or shows.  (*Id.*)  In summer 2014 alone, there were

approximately 65 different departments, channels or shows with interns.  (*Id.* at ¶ 15.)

Sirius XM's Human Resources Department provides departments, channels, and shows

with high-level guidance on the retention of interns.  Human Resources instructs that interns

cannot fill regular staff positions and should not be relied upon to conduct essential day-to-day

functions; that interns should be assigned challenging, meaningful, and informative work; and

that interns are unpaid and participate in the program for college credit only.  (*Id.* at ¶ 16-19.)
Further guidance includes that intern mentors at the department, channel, or show level must
complete two evaluations for their assignment interns; that mentors must report issues that arise
with assigned interns, including any intern complaints; that mentors must keep interns updated
regarding scheduled travel plans; that mentors must sign off on intern timesheets weekly; and
that mentors can refer interns as candidates for employment, but at no time should any interns be
guaranteed a position with the company.  (*Id.* at ¶ 21.)  In addition, interns are required to work
20-30 hours per week and must complete journal entries.  (*Id.*)

Decisions about whether to retain an intern are made at the department, channel, or show
level by individuals in those respective areas.  (*Id.* at ¶ 16.)  Each available internship is listed on
Sirius XM's website with a link whereby potential interns can apply.  (*Id.* at ¶ 17.)  The website
also includes a description of the internship, the content of which is based on information
provided by the requesting department, channel, or show.  (*Id.* at ¶ 16-17.)  The Sirius XM
Human Resources Department calls potential interns who apply through the website to confirm
that the persons understands that the internship is unpaid, that he/she must receive academic
credit to participate in an internship, and that the intern must be available to participate in the
internship for a minimum number of hours per week.  (*Id.* at ¶ 18.)  If the applicant meets these
minimum criteria, the applicant is then referred to the requesting channel, department, or show to
be interviewed.  (*Id.* at ¶ 19.)  From there, each channel, department, or show interviews their
respective applicants, decides which to select for the internship, and sets the intern's day-to-day
activities during the course of the internship.  (*Id.*)

Each intern is assigned a mentor who is typically an employee in the department, channel,
or show to which the intern is assigned.  (*Id.* at ¶ 20.)  Mentors are responsible for properly

supervising interns at all times, including taking time to train, teach, supervise, and provide feedback to the intern.  (*Id.*)  Sirius XM sets the expectation that intern mentors must devote sufficient time to mentoring activities throughout the length of the internship, and that interns should be provided with the opportunity to learn about their assigned department, channel, or show.  (*Id.* at ¶ 20.)

While all Sirius XM interns must receive academic credit to participate in the program, individual colleges and universities have differing requirements for what students must submit or complete to qualify for academic credits.  (*Id.* at ¶ 10.)  For example, colleges may require students to submit a report, weekly journals, or check in with an academic advisor during the internship to receive academic credit.  (*Id.*)  Given that internships are tied to receipt of academic credit, Sirius XM has three internship sessions per year that correspond roughly to university academic calendars: spring, summer, and fall.  (*Id.* at ¶ 11.)  Interns are not guaranteed a job at Sirius XM after their internship.  (*Id.* at ¶ 22.)

## B.   The Varying Activities of Sirius XM Interns.

Plaintiff Melissa Tierney held an internship with the Howard Stern Show from approximately August to December 2011.  (Tierney Decl. ¶ 2.)  According to Tierney, her "typical duties included running errands, placing orders, obtaining breakfast orders, delivering food items to on-air personality and office staff, reviewing news clips, reporting to on-air personalities, compiling data, and obtaining signatures from guests."  (*Id.* at ¶ 5*.)*  Tierney stated that, "[t]hroughout [her] internship, [her] supervisors exercised very little oversight over [her], and basically gave [her] assignments and expected [her] to complete them on [her] own."  (*Id.* at ¶ 8.)  By contrast, Plaintiff's declarant Daniel Miller, who interned in the Sports Department at Sirius XM's Washington, D.C. location, performed "duties includ[ing] audio editing, editing live professional and collegiate games and interviews, screening and taking telephone calls from

viewers, conducting interviews with guests, updating social media pages, and working with producers to assist in the operation of various NASCAR shows."  (Miller Decl. ¶¶ 2, 5.)  Miller's declaration is silent as to the amount of supervision he received.  (*Id.* at ¶¶ 2-12.)

Other Sirius XM interns had experiences that differed fundamentally from Tierney's and Miller's.  For instance, Andrew Vuong, who interned in the Sirius XM Finance/Accounting Department, "learned a lot about how the Finance Department of a radio station works."  (Vuong Decl. ¶¶ 3-4, 11.)  This included how to perform a monthly audit of songs played to confirm that royalties are being paid correctly; how to use Oracle Financial software to pull and adjust invoices; how to use the software Oracle Discoverer to run reports on balance sheets; and how to track expenses incurred for remote events.  (*Id.* at ¶ 12.)  At all times, Vuong's mentors "reviewed [his] work thoroughly and provided feedback" to him.  (*Id.* at ¶ 10.)

In contrast to Vuong's internship in the Finance Department, during Ben Fraternale's internship in the Broadcast Operations Department, he learned about how to create a radio broadcast from start to finish.  (Fraternale Decl. ¶¶ 6-9.)  Fraternale spent a significant portion of his time on a project that culminated in a two-hour show that Fraternale created.  (*Id.* at ¶ 7.)  This was Fraternale's "final project," for which he "recorded [his] own voice tracks describing the music [he] played, stitched it together with the music in the system, and the final product was a two hour show," which was never broadcast but, instead, "strictly a learning experience" for Fraternale.  (*Id.* at ¶ 7.)  Corey Chiocchio interned in the Interactive Editorial Department, where he learned, under the supervision of Sirius XM employees, how to edit content on the Sirius XM website.  (Chiocchio Decl. ¶¶ 3, 7.)  Like Fraternale, Chioccio had a final project, but Chioccio's project had a very different focus.  Chioccio's final project "involved running a video shoot on my own to practice the skills I learned throughout the course of the internship" in which he "was

allowed to supervise and edit a live band performance" under the supervision of a department employee.  (*Id.* at ¶ 10.)

Other interns learned about specialized tasks associated with production of a radio show. (*See, e.g.*, Hammill Decl. ¶¶ 4, 11 (college Music Production major who interned on Busted Open program; learned how to operate boards that "are more intricate and higher quality, including better faders, more sends and receives, and more options overall . . . under the observation of the show's regular board operator"); Adler Decl. ¶¶ 3, 9-13 (interned in Nashville for country music channels; learned how to use the Dalet Master software program to ingest new music into Sirius XM's systems and how to use Adobe Audition to edit audio clips); Latin Decl. ¶ 14 (learned how to screen phone calls from listeners).)  Still others learned and had responsibilities in areas of various business functions.  (*See, e.g.*, Liu Decl. ¶ 5 ("During my internship, I learned about the various functions that are accomplished by the Human Resources Department."); Moffett Decl. ¶ 7 ("I gained valuable experience and knowledge by shadowing and observing the Talent Representatives, who are employees in the Talent Relations Department.").)

### C.    The Instant Action.

Plaintiff filed the instant action on April 24, 2014, in which she alleges, among other things, that Sirius XM interns are entitled to unpaid minimum wage under the FLSA. (Complaint ¶¶ 39-46.)  Since then, three opt-in plaintiffs – Daniel Miller, Matthew Goldberg, and Justin Vitetta – have joined this action.  (Docket Nos. 8, 9, 15.)  On July 25, 2014, Plaintiff moved for conditional class certification of her FLSA claim pursuant to § 216(b) of the FLSA. (Docket Nos. 23-24.)

## ARGUMENT

Plaintiff has not met her burden to demonstrate that all Sirius XM interns are similarly situated with respect to job duties.

**I.     The Court Should Deny Plaintiffs' Motion for Conditional Certification and Notice.**

**A.     The Similarly Situated Requirement.**

Under 29 U.S.C. § 216(b), plaintiff bears the burden to demonstrate the propriety of class notice.  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010) (internal quotations marks omitted).  "Significantly, however, 'while plaintiff's burden at this stage is modest, it is not non-existent.'"  *Fraticelli v. MSG Holdings, L.P.*, 2014 WL 1807105 (S.D.N.Y. May 7, 2014) (quoting *Khan v. Airport Mgmt. Servs., LLC*, 2011 WL 5597371, at *5 (S.D.N.Y. Nov. 16, 2011)).  *See also Rudd v. T.L. Cannon Corp.*, 2011 WL 831446, at *6 (N.D.N.Y. Jan. 4, 2011) ("[A] court must . . . take a measured approach when addressing a request for collective action certification, mindful of the potential burdens associated with defending against an FLSA claim involve a large and broadly defined collective group of plaintiffs").  Specifically, it is Plaintiff's burden to "make a modest factual showing that [she] and potential opt-in plaintiffs together were victims of a common policy or plan *that violated the law*."  *Myers*, 624 F.3d at 555 (emphasis added) (internal quotations marks omitted).

The fact that "interns were not paid . . . alone does not necessarily imply that [a company] engaged in a 'common policy or plan that violated the law.'"  *Fraticelli*, 2014 WL 1807105, at *1 (quoting *Myers*, 624 F.3d at 555); *see also Vasquez v. Vitamin Shoppe Indus, Inc.*, 2011 WL 2693712, at *4 (S.D.N.Y. July 11, 2011) ("[T]he mere classification of a group of employees . . . is not by itself sufficient to constitute the necessary evidence of a common policy, plan, or practice that renders all putative class members as 'similarly situated' for § 216(b) purposes.").

Further, a plaintiff does not satisfy the burden to show "a common policy or plan that violated the law" where putative class member interns' "experiences appear to vary greatly . . . in ways that are highly relevant to the DOL factors." *Fraticelli*, 2014 WL 1807105, at *2.  For instance, in *Fraticelli*, in which plaintiff sought § 216(b) conditional class certification of a class of unpaid interns at the Madison Square Garden Company, Judge Furman denied plaintiff's motion for conditional certification where, "[i]n general, significant differences exist among the interns in terms of the activities they performed . . ., the supervision, training, and benefits they received . . ., the burden they imposed on [the company], and the manner in which they were selected for their positions." *Id.*  In particular, the court in *Fraticelli* found that Madison Square Garden interns worked in a wide variety of different departments "and their experiences appear to vary greatly from one department to the next." *Id.*  As a case in point, the court in *Fraticelli* compared the named plaintiff, who interned at the New York Rangers hockey team's practice facility and prepared uniforms, tracked inventory, and set up the locker room, with a putative class member's architecture internship, in which he observed architects working on projects, sat in on client meetings, and took design measurements and fittings. *Id.*

### B.   Plaintiff Has Not Met Her Burden To Establish That All Interns Are Similarly Situated.

Plaintiff has failed to meet her burden of demonstrating a common policy that violated the law.  Here, to determine whether any intern was properly treated as an unpaid trainee, this Court would have to determine, among other things, whether the internship provided training similar to that in an educational environment, who received the primary benefit, what training the intern received, whether the internship was for the benefit of the intern, whether the intern displaced regular employees or was under close supervision of existing staff, and whether the department that provided the training to the intern received any immediate benefit or whether its

operations were actually impeded.  *Fraticelli*, 2014 WL 1807105, at *2 ("The Second Circuit has not addressed the standard governing the trainee exception, but it is clear that the six criteria enumerated in a Department of Labor fact sheet are at least relevant to, and perhaps dispositive of, the inquiry.").  Against these factors, the experiences of numerous interns working across a wide variety of Sirius XM departments, channels, and shows were too varied to warrant conditional certification.

        1.      **Plaintiff and Other Interns Are Not Similarly Situated As To Their Internship Activities.**

The activities undertaken by Plaintiff and her opt-ins are not only completely different from each other, but also vary greatly from those of other interns in the many departments, channels, and shows at Sirius XM.  The internship activities of Plaintiff Tierney – who alleges that, as an intern for the Howard Stern Show, she ran errands, obtained and placed food orders, reviewed news clips, and compiled data (*see* Tierney Decl. ¶ 5) – differed from those of Opt-In Daniel Miller, whose internship activities in the Sports Department in Washington D.C. "typical[ly] . . . included audio editing, editing live professional and collegiate games and interviews, screening and taking telephone calls from viewers, conducting interviews with guests, updating social media pages, and working with producers to assist in the operation of various NASCAR shows" (Miller Decl. ¶ 5.)  Andrew Vuong, far afield from Tierney and Miller, performed a completely different set of activities in the Finance Department, such as auditing song plays to confirm correct payment of royalties and learning how to use Oracle Financial software to pull and adjust invoices.  (Vuong Decl. ¶¶ 3-4, 11-12.)  And Corey Chiocchio, who interned in the Interactive Editorial Department, was doing something entirely different from the other three – learning how to run a video shoot of a live band performance and how to edit website content.  (Chiocchio Decl. ¶¶ 3, 10.)  This was different from Ben Fraternale, who

learned how to create a radio broadcast from start to finish, culminating in the creation and production of a two-hour show (which was never broadcast, but was "strictly a learning experience").  (Fraternale Decl. ¶ 7.)

Other interns across the dozens of departments, channels, and shows of Sirius XM did completely different activities from Plaintiff and her declarants under different managers and in different locations – such as learning how to operate production boards (Hammill ¶ 11); learning about the various functions of a Human Resources Department (Liu Decl. ¶ 5); shadowing Talent Representatives who assist Sirius XM on-air guests (Moffett Decl. ¶ 7); learning how to use the Dalet Master software for managing ingesting and cataloguing of music (Adler Decl. ¶ 9); learning how to screen phone calls from listeners (Latin Decl. ¶ 14); and learning from start to finish how Broadcast Engineers set up and run live music sessions (Chiocchio Decl. ¶ 10).  *See Fraticelli*, 2014 WL 1807105, at *2 (denying conditional certification where "significant differences exist among the interns in terms of the activities they performed").

### 2.    Plaintiff and Other Interns Are Not Similarly Situated as to Their Training and Benefits Received.

Plaintiff and other interns are likewise not similarly situated as to the training and benefits received, including whether the training was "similar to the training which would be given in an educational environment."  (DOL Fact Sheet # 71.)  As an initial matter, all interns received some educational benefit from their internship because Sirius XM required that each intern receive academic credit for participating in an internship (Yuen Decl. ¶ 10), a fact that tends to show the internship benefitted the intern and was similar to an educational environment. (DOL Fact Sheet #71 ("more likely the internship will be viewed as an extension of the individual's educational experience . . . where a college or university exercises oversight over the internship program and provides educational credit").)

As to the training and benefits they received during their internships, Plaintiff and her declarants identically testified in conclusory fashion that "[t]he benefits that I gained from my internship were the same type of benefits I would receive from a regular job."  (Tierney Decl. ¶ 9; Goldberg Decl. ¶ 9; Miller ¶ 8; Vitetta Decl. ¶ 8.)  Even crediting these generic and conclusory affidavit statements, the training and educational benefit for Plaintiff and her declarants differed greatly from the many interns who testify to receiving significant training and educational benefits from their internships.  (*See, e.g.*, Hammill Decl. ¶ 15 ("I have benefitted significantly from the internship experience" and "have learned skills that will be helpful in any future job in the [radio] industry, such as operating the board, mixing promos, working the live radio, high-pressure environment, and observing how expert producers and hosts run a show."); Vuong Decl. ¶ 16 (in the Finance Department "learned a variety of skills during my internship, including how to use Microsoft Excel and what it is like working in a corporate environment"); Liu Decl. ¶ 10 ("Through the internship process, I was able to identify tasks that I enjoyed doing and figure out what I was interested in pursuing as a full time job after graduation."); Turnwall Decl. ¶ 13 ("Everything I am learning during this internship could be helpful in any job in the audio industry.").)  *See* DOL Fact Sheet # 71 ("The more the internship provides the individual with skills that can be used in multiple employment settings, as opposed to skills particular to one employer's operation, the more likely the intern would be viewed as receiving training.")

Further, Plaintiff and other interns are not similarly situated as to whether the training they received was similar to that received in an educational environment.  Plaintiff's declaration indicates she did things like "obtaining breakfast orders" and "delivering food items to on-air personalities" (Tierney Decl. ¶ 5), while other interns specifically deny performing any "busy work" (Adler Decl. ¶ 16; Chiocchio Decl. ¶ 20; Hammill Decl. ¶ 14; Liu Decl. ¶ 12; Vuong Decl.

¶ 18).  Declarants testified to attending training sessions on a variety of subjects.  (*See, e.g.*, Vuong Decl. ¶ 14 ("During my internship I attended three 'lunch and learn' sessions, which are meetings during which food is served and the interns have an opportunity to listen to one of the Sirius employees talk about their job responsibilities and career path."); Moffett Decl. ¶ 14 ("I attended at least one resume building workshop while I was an intern and it was quite helpful.").)[2]

It is indisputable that the kind of things that interns learned during their internship experiences were similar to what can be found in an educational setting.  For example, Chris Hammill, whose college major is Music Production, "found the Sirius internship to be an excellent opportunity to further [his] education in this area" with tasks such as learning how to use Music Master, software "that is used throughout the music industry" and which Sirius XM uses to program the songs on its stations.  (Hammill Decl. ¶¶ 4, 5, 7.)  Similarly educational was Ben Fraternale's opportunity "to make a personal two-hour recording to apply everything I learned over the internship," whereby Fraternale created a show of his own that "was never used by Sirius XM; it was just practice for me to gain experience."  (Fraternale Decl. ¶ 8.)  *See also* Turnwall Decl. ¶¶ 4, 7 (college Studio Production major; "I have learned about the job of a Broadcast Engineer through first-hand observation and hands-on training"); Adler Decl. ¶¶ 4, 9-12 (college Recording Arts and Entertainment Business major; learned how to ingest new music into Sirius XM systems, edit audio clips, and assisted with live music performances).

---

[2] *See also* Liu Decl. ¶ 8 ("On occasion, all of the interns in DC would meet to listen to employees from various departments in the company talk about their career path and job duties to give the interns a different perspective").

>    3.    **Plaintiff and Other Interns Are Not Similarly Situated As To The Level of Supervision And the Extent To Which The Internships Impeded Department Operations.**

Plaintiff and one of her declarants testified identically that their "supervisors exercised very little oversight over me, and basically gave me assignments and expected me to complete them on my own." (Tierney Decl. ¶ 8; Goldberg Decl. ¶ 8.)  Notably, Plaintiff's two other declarants were silent about the level of supervision exercised over them.  (Vitetta Decl. ¶¶ 1-13; Miller Decl. ¶¶ 1-12.)  By contrast, other interns testified to being very closely supervised and monitored by Sirius XM employees, to the point where department operations were impeded as mentors took time out of their days to work with their assigned interns.  This should be no surprise given the important oversight role provided by the mentor assigned to each intern.  (Yuen Decl. ¶ 20.)  For example, although William Latin, like Tierney, interned for The Howard Stern Show, Latin testified to being much more closely supervised.  (Latin Decl. ¶¶ 8-9, 12 ("John reviews everything I prepare for the show before it is used and he offers feedback and constructive criticism.").)  Likewise closely supervised was Fraternale, who testified that "[t]here were times when [his mentor] spent an entire day in the studio with me showing us how things worked."  (Fraternale Decl. ¶ 9.)  *See also* Hammill Decl. ¶ 7 (mentor "spent significant amounts of time meeting with me"); Vuong Decl. ¶¶ 7-10 (mentor "checks in with me every day and spends approximately twenty minutes mentoring me every day"; other employees "reviewed my work thoroughly and provided feedback to me"); Moffett Decl. ¶¶ 7, 11, 13 ("Mentors were always present while I was working and reviewed everything I did to make sure I did it correctly.").

>    C.    **Plaintiff's Arguments Under § 216(b) Do Not Suffice.**

Against this backdrop, Plaintiff's arguments are without merit.

First, Plaintiff argues that "[a]lthough . . . unpaid interns worked in different departments, both geographically and organizationally, they uniformly share similar work experiences" and "routinely performed the same work that Sirius [XM's] paid employees performed." (Motion at pp. 3, 7.)[3]  As an initial matter, the four declarations submitted by Plaintiff should be disregarded because they contain precisely the same "unsupported and conclusory assertions" that led the court in *Fraticelli* to disregard the declarations submitted in that case.  *Fraticelli*, 2014 WL 1807105, at *3.[4]

Plaintiff's own evidence on this score – the declarations of Plaintiff and three opt-in plaintiffs as well as a series of blog posts authored by interns from Sirius XM's website – only goes to confirm the great variation in intern activities.  The purported duties of Plaintiff Tierney, "running errands, placing orders, obtaining breakfast orders, delivering food items to on-air personality and office staff, reviewing news clips, reporting to on-air personalities, compiling data, and obtaining signatures from guests" (Tierney Decl. ¶ 5), are vastly different than those of opt-in plaintiff Daniel Miller, who testified to "audio editing, editing live professional and collegiate games and interviews, screening and taking calls from viewers, conducting interviews with guests, updating social media pages, and working with producers to assist in the operation of various NASCAR shows" (Miller Decl. ¶ 5).  That interns do not "uniformly share similar work experiences" (Motion at p. 7) is further confirmed by a series of intern blog postings, taken

---

[3] Plaintiff's Memorandum of Law in Support of Plaintiff's Motion is cited herein as "Motion at [page]."

[4] This should not be surprising given that plaintiffs' counsel in *Fraticelli* also represents Plaintiff in the instant case.  In declining to credit plaintiffs' affidavits, the *Fraticelli* court pointed to the following unsupported affidavit statements: "'If I had not performed the various tasks I was assigned, MSG would have had to hire a paid employee to do them'" and "'I know that MSG treated other interns in a manner similar to me based on my observations as well as discussion we often had amongst ourselves.'"  *Fraticelli*, 2014 WL 1807105, at *3 (quoting plaintiff's affidavits).  The declarations submitted in the instant case contain *precisely the same* unsupported and conclusory language that led the *Fraticelli* court to disregard plaintiffs' affidavits.  (*See, e.g.*, Tierney Decl. ¶ 10 ("If I had not performed the various tasks I was assigned, Sirius [XM] would have had to hire a paid employee to do them."); Tierney Decl. ¶ 12 ("I know that Sirius [XM] treated other interns in a manner similar to me based on my observations as well as the discussions we often had amongst ourselves."); *see also* Miller Decl. ¶¶ 9, 11; Goldberg Decl. ¶¶ 10, 12; Vitetta Decl. ¶¶ 9, 12.)

from the Sirius XM website, that Plaintiffs put into evidence. *See, e.g.* Docket No. 23-11 (Opie & Anthony show intern; "learning about many different software systems including Dalet and Pro Tools"); Docket No. 23-14 at 4 (Finance Intern; "projects such as invoice analysis" and "analysis of the Telecommunications companies that Sirius XM is contracted with"); Docket No. 23-14 at 7-8 (Talent Relations intern; "I actually help out Laura, in the department, who is in charge of booking guests who are authors" by "get[ting] some information on the book, which is then sent to hosts that might be interested in having the author on the show").)

Not only do the blog posts further confirm the great variation among internship activities, they demonstrate varying levels of supervision experienced by interns, *see, e.g.* Docket No. 23-10 ("Troy, the production guy, has taken time out of his busy work load to slow down what he is doing so that I can watch and ask questions."), and that the interns received varied training and educational benefits (Docket No. 23-11 (Opie & Anthony show intern; "During my first few weeks with the show I have been involved learning about many different software systems including Dalet and Pro Tools"); Docket No. 23-14 at 2 (Mad Dog Sports Radio intern; "I cannot begin to describe how much this experience has accelerated my professional and academic goals . . . This truly was the greatest academic opportunity for me and I never took one day for granted!").)

Second, in a feeble attempt to show centralization, Plaintiff points to a few isolated pages from the Sirius XM website, stating that "[r]egardless of the interns' desired location or department, all prospective interns must apply for their internship using one centralized . . . website," which contains a "common internship application" and "a general description of Sirius' internships." (Motion at pp. 2-3.) But this superficial examination misses the mark, neglecting to account for the highly decentralized way in which each intern is selected and how

each internship is run.  The Sirius XM website is merely the portal used for intake of applications

to particular internships.  From there, the applications are dispersed to the department, channel,

or show that is seeking an intern, and it is each department, channel and show that interviews

applicants, decides what questions to ask in the interview, decides what criteria should be used to

determine which intern to retain, and ultimately makes the hiring decision (subject to Human

Resources approval) and decides the day-to-day tasks of the individual intern.  (Yuen Decl.

¶¶ 16-20.)  That is, rather than a highly centralized internship process, it is generally left to the

individual departments, channels, and shows to determine who to hire and how best to manage

the activities of the intern.  (Yuen Decl. ¶¶ 19-20.)  *Fraticelli*, 2014 WL 1807105, at *3

(rejecting plaintiffs' argument that defendant "runs a centralized internship program" where

plaintiffs "present little or no evidence to support that assertion").

Third, Plaintiff points to a handful of decisions in which courts granted conditional

certification of FLSA claims by unpaid interns.  (Motion at p. 14.)  But these cases are all

distinguishable on their facts.  For instance, in *O'Jeda v. Viacom, Inc.*, 2014 WL 1344604, at *1

(S.D.N.Y. April 4, 2014), the court pointed to "centralized internship hiring, administrative, and

training policies."  By contrast, here, each department, channel, and show had discretion to

interview their own applicants, select which applicants to retain as interns, and then set the

interns' respective day-to-day activities.  (Yuen Decl. ¶¶ 16-18.)  Equally unavailing is

Plaintiff's reliance on *Grant v. Warner Music Grp. Corp.*, 2014 WL 1918602, at *4, 6 (S.D.N.Y.

May 13, 2014), where the court granted conditional certification, pointing to the fact that

plaintiffs did not receive academic credit and there was "substantial evidence that Defendants'

internship program was highly centralized."  By contrast, here, all interns at Sirius XM received

academic credit and the internship program was highly *de*centralized.  And in *Glatt v. Fox*

*Searchlight Pictures, Inc.*, 293 F.R.D. 516, 533, 538 (S.D.N.Y. 2013), there was testimony from company managers that, had the intern not performed the duties, a paid employee would have done them.  Of course, there is no such testimony here, and Plaintiff's only evidence in this regard is the conclusory statements in the Plaintiff's declarations.

Therefore, because "significant differences exist among the interns in terms of the activities they performed . . ., the supervision, training, and benefits they received . . ., the burdens they imposed on [Sirius XM], and the manner in which they were selected for their positions," Plaintiff has failed to meet her burden and conditional certification should be denied. *Fraticelli*, 2014 WL 1807105, at *2.

## II.   Sirius XM Objects To Plaintiff's Request For Telephone Numbers, Email Addresses, and Social Security Numbers, and Plaintiff's Request To Contact Putative Class Members Via Text Message.

The Court should deny the Motion outright, in which case it would not need to reach Plaintiffs' request (Docket No. 23-21) for putative class member Social Security numbers, telephone numbers, and email addresses, as well as for permission to contact putative class members by text message.  If the Court does reach these requests, however, they should be denied because first-class mail is far and away the preferred notice method.  *Gonzalez v. Scalinatella, Inc.*, 2013 WL 6171311, at *5 (S.D.N.Y. Nov. 25, 2013) (first-class mail sufficient); *Capsolas v. Pasta Resources, Inc.*, 2011 WL 1770827, at *5 (S.D.N.Y. May 9, 2011) (same); *Han v. Sterling Nat'l Mort. Co., Inc.*, 2011 WL 4344235, at *12 (E.D.N.Y. Sept. 14, 2011) ("plaintiff's request for Social Security numbers and phone numbers is premature" because "there is no evidence at this time that plaintiff will have trouble reaching the Proposed Class by sending the class notice to their address via first class mail"); *see also Perez v. Prime Steak House Rest. Corp.*, 959 F. Supp. 2d 227, 233 n. 6 (D.P.R. 2013) ("substantial privacy concerns" associated with Social Security numbers); *Parks v. Eastwood Ins. Servs., Inc.*, 2002 WL

34370244, at *5 (C.D. Cal. July 29, 2002) ("production of telephone numbers . . . is unwarranted and presents a greater risk of improper solicitation"); *Reab v. Elec. Arts, Inc.*, 214 F.R.D. 623, 630 (D. Colo. 2002) ("electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court").

### III.   Sirius XM Objects To Plaintiff's Proposed Notice.

Notice must be "accurate" and provide sufficient information to allow "informed decisions about whether to participate," *Hoffmann-LaRoche v. Sperling*, 493 U.S. 165, 170 (1989), yet Plaintiff's proposed notice (Docket No. 23-19) fails this standard.  For example, Plaintiff's proposed time period is improper.  She has requested that notice issue to all persons who were Sirius XM interns from July 25, 2011 (three years before the *Motion* was filed) and the present.  But opt-in plaintiffs can assert claims no more than three years before they filed *opt-in consent forms*.  *See* 29 U.S.C. § 255.  The proposed notice likewise fails to mention that opt-in plaintiffs may be required to participate in discovery.  *Velazquez v. Digital Page, Inc.*, 2014 WL 2048425, at *14 (E.D.N.Y. May 19, 2014) (collecting cases).  Therefore, in the event Plaintiff's Motion is granted (which it should not be), Sirius XM asks the Court to direct the parties to confer regarding the content of the notice and to submit any disputes to the Court.

Dated:  August 29, 2014                  Respectfully submitted,

By:      /s/ Matthew W. Lampe
         Matthew W. Lampe (ML 2602)
         Emilie A. Hendee (EH 2835)
         JONES DAY
         222 East 41st Street
         New York, NY 10017
         Phone: (212) 326-3939
         Fax: (212) 755-7306
         mwlampe@jonesday.com
         ehendee@jonesday.com
         *Attorneys for Defendant Sirius XM Radio Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of August 2014, a copy of the foregoing

*DEFENDANT SIRIUS XM RADIO INC.'S MEMORANDUM OF LAW IN OPPOSITION TO*

*PLAINTIFF'S MOTION FOR COURT AUTHORIZED NOTIFICATION TO THE COLLECTIVE,*

*PURSUANT TO 29 U.S.C. § 216(b)* was filed electronically and served by mail on anyone

unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by

operation of the Court's electronic filing system or by mail to anyone unable to accept electronic

filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the

Court's CM/ECF System.

Dated:  August 29, 2014                    Respectfully submitted,

                                           By:    */s/ Matthew W. Lampe*
                                                  Matthew W. Lampe (ML 2602)
                                                  Emilie A. Hendee (EH 2835)
                                                  JONES DAY
                                                  222 East 41st Street
                                                  New York, NY 10017
                                                  Phone: (212) 326-3939
                                                  Fax: (212) 755-7306
                                                  mwlampe@jonesday.com
                                                  ehendee@jonesday.com

                                                  *Attorneys for Defendant Sirius XM Radio Inc.*

ATI-2616049v2